## NELLIE M. GRACE, PLAINTIFF, v. ATLANTIC CITY AND SHORE RAILROAD COMPANY, DEFENDANT.

Decided December 14, 1931.

For the rule, *Bourgeois & Coulomb.*

*Contra, William I. Garrison.*

SOOY, C. C. J. Plaintiff has a verdict in her favor against defendant and the defendant has a rule to show cause why this verdict should not be set aside as being contrary to the greater weight of the believable evidence.

At the close of plaintiff's case the defendant had the following situation to meet: Plaintiff testified that she and Mr. Hassan waited on a safety island at Tennessee avenue in Atlantic City intending to take passage on an eastbound trolley car; that the car arrived and that she and Mr. H.

boarded it; that Mr. H. preceded her. Mr. H. says that as he was in the vestibule of the car paying his fare he heard a scream and, turning, saw that plaintiff was fastened between the two car doors; that thereafter Mr. H. and plaintiff took seats within the car.

Plaintiff, in describing the manner in which her injuries were alleged to have been received, says—"the door caught me from my face and shoulder down to my hand. As I went to pull my hand out I stretched my neck and I reached for that iron railing and as I did I pulled my neck and I sprained the ligaments in my neck."

Plaintiff distinctly says that she was not hurt while standing on the safety island and reaching into the car in an attempt to board it; that she was not injured while on the entrance step preparatory to entering the vestibule but that she was on the platform of the vestibule with the heel of her shoes three inches inside the outer edge of the vestibule platform.

Defendant was called upon to meet the situation created by this evidence, *i. e.,* a positive assertion that defendant had been negligent in that, after Mrs. Grace had got within the vestibule of the trolley and was standing with her heels at least three inches inside the exterior line of the vestibule platform, the conductor closed the doors of the car and thus injured plaintiff.

Defendant's evidence demonstrated beyond question that it was a physical impossibility that plaintiff could have been injured as she says she was. The doors were double and each door swung on a middle hinge, *i. e.,* folded in toward the vestibule platform when closing and they were an inch or more below the level of the platform so that, when they closed, they rested upon the outer edge of the platform and were stopped by it from closing further than the outer edge.

Even assuming that plaintiff was hurt, she could not have been (to use her language) "caught me from my face and shoulder down to my hand." She could not have been caught at all after entering the vestibule, excepting as she put her hand in back of her and then, unless she turned around and faced these doors, could not possibly have been caught from her face and shoulder down to her hand.

Defendant was not called upon to show that plaintiff could not possibly have been hurt under any and all circumstances but, simply, that she could not have been injured under the conditions disclosed by her testimony. I say that because it may have been possible for plaintiff to have been caught by the doors if, while she was on the safety isle, she reached her arm into the vestibule while the conductor was shutting the doors. (This could not have happened had she been standing on the vestibule entrance step because her weight would have prevented the step from raising and the doors from closing.)

If plaintiff was injured while standing on the safety island and while attempting to board the trolley from that position and the evidence had justified such a finding, the jury would have had to pass on plaintiff's contributory negligence before giving her a verdict. Plaintiff's own version of the happening withdrew these considerations from the jury and eliminated any possible discussion of contributory negligence on her part. She put herself in the interior of the vestibule and in a place where she could not have been injured as she says she was.

Even had I arrived at a different conclusion on this phase of the case, still it seems to me obvious that the verdict of the jury was contrary to the weight of the believable evidence.

Mr. Hasson says that he saw the doors close on Mrs. Grace and that he saw this from his position in the vestibule as he paid his fare. Four witnesses testify that Mr. H. preceded Mrs. Grace into the trolley; that he paid his own fare and went into the interior of the car and was therein when Mrs. Grace screamed. If these four witnesses are to be believed Mr. H. is discredited. Three of these defendant witnesses were absolutely disinterested (passengers) and one was the conductor. One of these passengers was seated on the long seat in the extreme rear of the trolley and opposite the conductor and two were standing on the rear (vestibule) platform. Just how the jury could have discredited these witnesses and believe Mr. H., especially in view of the impossibility of the accident happening as plaintiff says it did, I fail to see.

These same three disinterested witnesses and the conductor also testify as to what happened when Mrs. Grace attempted to board the trolley and if their testimony is to be believed, Mrs. Grace was not on the trolley at all when the conductor started to shut the doors. On this phase of the case I also think that Mrs. Grace failed to carry the burden of proof.

It may be that Mrs. Grace received some slight injury in boarding the trolley. If she did, she made the mistake of not telling just how it happened rather than putting herself in a position where it could not have happened. It may be that if she had told just how she received whatever injury she may have sustained, that she would have disclosed her own contributory negligence. However that may be, the rule must be made absolute.

I have purposely refrained from commmenting on Mrs. Grace's testimony as to the extent of her injuries but, I must say, that it seems rather unsual at least, that injuries to the left arm, shoulder, neck and wrist would have caused a tumor to appear on her right shoulder. It is true that Dr. Kline did not discover this tumor until over a month after the accident but Dr. Shenfeld says that he saw the same tumor about six months before the alleged injuries.